UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

Arlene C. Stephens,
Case No. 3:13-bk-02068-JAF
Chapter 13

Debtor.

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

<div style="border:1px solid black">

**NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING**

**PURSUANT TO LOCAL RULE 2002-4, THE COURT WILL CONSIDER THIS MOTION WITHOUT FURTHER NOTICE OR HEARING UNLESS A PARTY IN INTEREST FILES AN OBJECTION WITHIN TWENTY-ONE (21) DAYS FROM THE DATE SET FORTH ON THE PROOF OF SERVICE ATTACHED TO THIS PAPER.  IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PAPER, YOU MUST FILE YOUR OBJECTION WITH THE CLERK OF COURT AT 300 N. HOGAN AVENUE, SUITE 3-350, JACKSONVILLE, FLORIDA 32202, AND SERVE A COPY ON THE MOVANT'S ATTORNEY:  MICHAEL A. NARDELLA, ESQ., BURR & FORMAN LLP, 200 S. ORANGE AVENUE, #800, ORLANDO, FL 32801, AS WELL AS THE FOLLOWING PARTIES: G. RICHARD CHAMBERLAIN, ESQ., P.O. BOX 380, WILLISTON, FL 32696; DOUGLAS W. NEWAY, P.O. BOX 4308, JACKSONVILLE, FL 32201; AND OFFICE OF THE U.S. TRUSTEE, GEORGE C. YOUNG FEDERAL BUILDING, 400 W. WASHINGTON STREET, SUITE 1100, ORLANDO, FL 32801.**

**IF YOU FILE AND SERVE AN OBJECTION WITHIN THE TIME PERMITTED, THE COURT MAY SCHEDULE AND NOTIFY YOU OF A HEARING, OR THE COURT MAY CONSIDER THE OBJECTION AND MAY GRANT OR DENY THE RELIEF REQUESTED WITHOUT A HEARING.  IF YOU DO NOT FILE AN OBJECTION WITHIN THE TIME PERMITTED, THE COURT WILL CONSIDER THAT YOU DO NOT OPPOSE THE RELIEF REQUESTED IN THE PAPER, WILL PROCEED TO CONSIDER THE PAPER WITHOUT FURTHER NOTICE OR HEARING, AND MAY GRANT THE RELIEF REQUESTED.**

</div>

Campus USA Credit Union (the "Lender"), by and through its undersigned counsel and pursuant to 11 U.S.C. § 362(d), hereby requests entry of an order modifying the automatic stay and, in support thereof, states as follows:

**Jurisdiction**

1.      On April 5, 2013 (the "Petition Date"), Arlene C. Stephens (the "Debtor") commenced a bankruptcy case under chapter 13 of the Bankruptcy Code by filing a voluntary petition for relief.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is 11 U.S.C. § 362.

**Background**

3.      On or about January 20, 2009, ACS Marketing, Inc. ("ACS") executed and delivered to Lender that certain Promissory Note in the original principal amount of $20,000.00 ("Note").  A copy of the Note is attached hereto as **Exhibit A.**

4.      On or about January 20, 2009, ACS executed and delivered to Lender that certain Debt Modification Agreement in the original principal amount of $147,100.00 ("Modification Agreement").  A true and correct copy of the Modification Agreement is attached hereto as **Exhibit B**.

5.      Contemporaneously with the execution of the Modification Agreement, the Debtor executed and delivered to Lender a Mortgage as security for the Modification Agreement ("Mortgage").  The Mortgage was recorded in Official Records Book 05150, at Page 1531, of the Public Records of Marion County, Florida.  A true and correct copy of the Mortgage is attached hereto as **Exhibit C**.

6.      The Debtor owns and the Mortgage encumbers certain real property located in Marion County, Florida, more particularly described on **Exhibit D** attached hereto (the

"Property").  The Debtor has identified the Property on her Schedule A – Real Property filed with the Court herein as the "Vacant Lot".  (Doc. 1).

7.      The Property address is commonly known as SW CR 484, Ocala, Florida 34481; Marion County, Florida Parcel ID No. 35341-001-06.

8.      The Debtor is in default on the Modification Agreement Mortgage for failure to make the payment due on April 2013, and all payments thereafter.

9.      On April 5, 2013, Debtor filed a petition under Chapter 13 of the Bankruptcy Code.

10.      The Debtor has estimated the current value of the Property at $77,000.00 (Schedule A, Doc. 1).  The Property is severely underwater.

11.      As of the Petition Date, Lender is owed from Debtor the principal amount of $178,364.17, plus pre-petition interest and late charges.

12.      The Debtor has not properly provided for treatment of Campus' secured claim in her Amended Chapter 13 Plan (Doc. No. 13), and has attempted to modify Campus' claim as a second mortgage when it is in fact a first.   The Debtor incorrectly listed Campus' secured claim by stating that Campus "holds a second mortgage on the debtor's homestead property" and further stated that she "will request the court strip this lien."

### Relief Requested

13.      Lender seeks the entry of an order modifying the automatic stay, pursuant to 11 U.S.C. § 362(d)(1) and (2), to permit Lender to exercise all of its rights and remedies with respect to the Property, including the sale of the Property.

14.      Cause exists for relief from the automatic stay under 11 U.S.C. § 362(d)(1) because Lender lacks adequate protection for its interest in the Property.

15.     Furthermore, relief from the automatic stay is appropriate under 11 U.S.C. § 362(d)(2) because the Debtor has no equity in the Property, and the Property is not necessary for an effective reorganization since the Property is vacant land.

16.     Campus requests that the fourteen (14) day stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3) be waived so that it may pursue *in rem* remedies without further delay.

WHEREFORE, Campus USA Credit Union moves this Court to enter an order (i) granting relief from stay to the movant, (ii) waving the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3) so that Campus USA Credit Union can pursue *in rem* remedies without further delay, and (iii) granting such other relief as this Court may deem just and proper.

/s/ Michael A. Nardella
Michael A. Nardella, Esq.
Florida Bar No. 51265
**BURR & FORMAN LLP**
200 S. Orange Avenue
Suite 800
Orlando, Florida  32801
Telephone:  (407) 540-6600
Facsimile:  (407) 540-6601
E-Mail: michael.nardella@burr.com
**ATTORNEYS FOR**
**CAMPUS USA CREDIT UNION**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was furnished via electronic mail using the Court's CM/ECF system on September 4, 2013 and/or via First Class U.S. Mail to:  Debtor: Arlene C. Stephens, 10655 S.W. 69th Terrace, Ocala, FL 34476; Debtor's Counsel: G. Richard Chamberlin, Esq., P.O. Box 380, Williston, FL 32696; Chapter 13 Trustee: Douglas W. Neway, P.O. Box 4308, Jacksonville, FL 32201; Office of the U.S. Trustee, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801; and all parties on the attached Master Creditors Matrix.

*/s/ Michael A. Nardella*
Michael A. Nardella, Esq.

Label Matrix for local noticing
113A-3
Case 3:13-bk-02068-JAF
Middle District of Florida
Jacksonville
Wed Sep  4 15:04:23 EDT 2013

Campus USA Credit Union
c/o Burr & Forman LLP
200 S. Orange Ave.
#800
Orlando, FL 32801-6404

United States Trustee - JAX 13/7 7
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2217

CitiMortgage, Inc
P.O. Box 688971
Des Moines, IA 50368-8971

ACS Marketing, Inc.
10655 SW 69th terrace
Ocala, FL 34476-9339

AFNI, Inc.
404 Brock Dr
Bloomington, IL 61701-2654

American InfoSource LP as agent for
Midland Funding LLC
PO Box 268941
Oklahoma City, OK  73126-8941

Asset Acceptance LLC assignee  GEMB
PO Box 2036
Warren, MI 48090-2036

Asset Acceptance, LLC
P.O. Box 1630
Warren, MI 48090-1630

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

Campus USA Credit Union
P.O. Box 147029
Gainesville, FL 32614-7029

Campus USA Credit Union
c/o Michael A. Nardella, Esq.
Burr & Forman LLP
200 S. Orange Avenue, Suite 800
Orlando, FL 32801-6404

Citi Mortgage,Inc.
Bankruptcy Dept.
P.O. Box 140609
Irving, TX 75014-0609

Credit Collections USA
256 Greenbag Road, Ste. 1
P.O. Box 873
Morgantown, WV 26507-0873

Credit One bank
P.O. Box 98873
Las Vegas, NV 89193-8873

Discover Bank
DB Servicing Corporation
PO Box 3025
New Albany, OH  43054-3025

Discover Financial Svcs LLC.
P.O. Box 15316
Wilmington, DE 19850-5316

Florida Dept. of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

GE Capital / Walmart
P.O. Box 965024
Orlando, FL 32896-5024

Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101-7346

LVNV Funding, LLC its successors and assigns
assignee of FNBM, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Marion County Tax Collector
P.O. Box 970
Ocala FL 34478-0970

Midland Credit Management
8875 Aero Dr. Ste 200
San Diego, CA 92123-2255

Morris Hardwick Scheider
9409 Philadelphia Road
Rosedale, MD 21237-4103

Morris Hardwick Schneider
5110 Eisenhower Blvd
Siute 120
Tampa, FL 33634-6340

NCC Business Services
9428 Baymeadows Rd
Suite 200
Jacksonville, FL 32256-7912

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Richard Perry, Esq.
820 SE Fort King Street
Ocala, FL 34471-2320

United States Attorney
300 North Hogan St Suite 700
Jacksonville, FL 32202-4204

Arlene C. Stephens
10655 S. W. 69th Terrace
Ocala, FL 34476-9339

Douglas W. Neway
P O Box 4308
Jacksonville, FL 32201-4308

G Richard Chamberlin
George Richard Chamberlin, P.A.
P.O. Box 380
Williston, FL 32696-0380

Richard A. Perry
820 East Fort King Street
Ocala, FL 34471-2320

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Bank of America
P.O. Box 982235
El Paso, TX 79998-2235

Portfolio Recovery Assoc.
120 Corporate Blvd. Ste. 100
Norfolk, VA 23502

End of Label Matrix
Mailable recipients    32
Bypassed recipients     0
Total                  32

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| ▓▓▓▓▓ | ACS Marketing, Inc. | | 01/20/09 | OS |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $20,000.00 | Wall Street Journal Prime plus 2.000% subject to: | 5.25% | On Demand | Commercial |
| | Floor – 5.25% | | | |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
### (Commercial - Revolving Draw)
State of Florida's Documentary Stamps have been affixed to the security instrument which secures this Note and will be cancelled pursuant to law.

**DATE AND PARTIES.** The date of this Promissory Note (Note) is January 20, 2009. The parties and their addresses are:

LENDER:
CAMPUS USA CREDIT UNION
P.O. Box 147029
Gainesville, FL 32614-7029
Telephone: (352) 335-9090

BORROWER:
ACS MARKETING, INC.
a Florida Corporation
10655 SW 69th Terrace
Ocala, FL 34476

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you, or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum outstanding principal balance of $20,000.00 (Principal), plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note is paid in full and you have no further obligations to make advances to me under the Loan.
I may borrow up to the Principal amount more than one time.

**3. ADVANCES.** Advances under this Note are made according to the following terms and conditions.

A. **Requests for Advances.** My requests are a warranty that I am in compliance with all the Loan Documents. When required by you for a particular method of advance, my requests for an advance must specify the requested amount and the date and be accompanied with any agreements, documents, and instruments that you require for the Loan. Any payment by you of any check, share draft or other charge may, at your option, constitute an advance on the Loan to me. All advances will be made in United States' dollars. I will indemnify you and hold you harmless for your reliance on any request for advances that you reasonably believe to be genuine. To the extent permitted by law, I will indemnify you and hold you harmless when the person making any request represents that I authorized this person to request an advance even when this person is unauthorized or this person's signature is not genuine.

I or anyone I authorize to act on my behalf may request advances by the following methods.

(1) I make a request in person.

(2) I make a request by phone.

B. **Advance Limitations.** In addition to any other Loan conditions, requests for, and access to, advances are subject to the following limitations.

(1) **Obligatory Advances.** You will make all Loan advances subject to this Agreement's terms and conditions.

(2) **Advance Amount.** Subject to the terms and conditions contained in this Note, advances will be made in exactly the amount I request.

(3) **Disbursement of Advances.** On my fulfillment of this Note's terms and conditions, you will disburse the advance in any manner as you and I agree.

(4) **Credit Limit.** I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan to be greater than the Principal limit. You may, at your option, grant such a request without obligating yourselves to do so in the future. I will repay any over advances in addition to my regularly scheduled payments. I will repay any over advance by repaying you in full within 10 days after the overdraft occurs.

(5) **Records.** Your records will be conclusive evidence as to the amount of advances, the Loan's unpaid principal balances and the accrued interest.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of 5.25 percent (Interest Rate) until February 20, 2009, after which time it may change as described in the Variable Rate subsection.

A. **Interest After Default.** If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Note. In such event, interest will accrue on the outstanding Principal balance at the Interest Rate in effect from time to time under the terms of this Loan, until paid in full.

B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

ACS Marketing, Inc.
Florida Promissory Note
FL/4cathydrl00109100006381028011609N     ©1996 Bankers Systems, Inc., St. Cloud, MN *Expert*     Initials _OS_

Page 1

## EXHIBIT A

C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the Florida usury laws under Fla. Stat. § 687.

D. **Accrual.** Interest accrues using an Actual/365 days counting method.

E. **Variable Rate.** The interest rate may change during the term of this transaction.

(1) **Index.** Beginning with the first Change Date, the interest rate will be based on the following index: the base rate on corporate loans posted by at least 75% of the 30 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate.

The Current Index is the most recent Index figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the interest rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar index. You will give me notice of your choice.

(2) **Change Date.** Each date on which the interest rate may change is called a Change Date. The interest rate may change February 20, 2009 and monthly thereafter.

(3) **Calculation Of Change.** On each Change Date you will calculate the interest rate, which will be the Current Index plus 2.000 percent. The result of this calculation will be rounded to the nearest .001 percent. Subject to any limitations, this will be the interest rate until the next Change Date. The interest rate shall change on the first day of each month after a change in the Current Index. Any such change in the rate of interest payable on this Promissory Note shall become effective as of the opening of business on the day in which such change in the Current Index is made generally effective. The interest rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) **Limitations.** The interest rate changes are subject to the following limitations:

(a) **Lifetime.** The interest rate will never be less than 5.250 percent.

(5) **Effect Of Variable Rate.** A change in the interest rate will have the following effect on the payments: The amount of scheduled payments and the amount of the final payment will change.

5. **ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

A. **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.
Florida Doc Stamp. A(n) Florida Doc Stamp fee of $70.00 payable from separate funds on or before today's date.

6. **REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

A. **Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

7. **PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay all accrued interest on the balance outstanding from time to time in regular payments beginning February 20, 2009, then on the same day of each month thereafter. A final payment of the entire unpaid outstanding balance of Principal and interest will be due on demand.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Interest payments will be applied first to any charges I owe other than late charges, then to accrued, but unpaid interest, then to late charges. Principal payments will be applied first to the outstanding Principal balance, then to any late charges. If you and I agree to a different application of payments, we will describe our agreement on this Note. The actual amount of my final payment will depend on my payment record.

8. **PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

9. **LOAN PURPOSE.** This is a business purpose loan transaction.

10. **ADDITIONAL TERMS.**

**ANNUAL 30-DAY REST PERIOD**
Loan balance must be paid down to a zero balance for a consecutive 30-day period each year.

11. **SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Mortgage - 9200 SW CR 484 | ACS Marketing, Inc. |
| Mortgage - SW CR 484, Parcel ID No. 35341-001-06 | Arlene C. Stephens |

12. **DEFAULT.** I understand that you may demand payment anytime at your discretion. For example, you may demand payment in full if any of the following occur:

A. **Payments.** I fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

C. **Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

D. **New Organizations.** Without your written consent, I organize, merge into, or consolidate with an entity; acquire all or substantially all of the assets of another; materially change the legal structure, management, ownership or financial condition; or effect or enter into a domestication, conversion or interest exchange.

E. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

F. **Other Documents.** A default occurs under the terms of any other Loan Document.

G. **Other Agreements.** I am in default on any other debt or agreement I have with you.

H. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

I. **Judgment.** I fail to satisfy or appeal any judgment against me.

J. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

K. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

L. **Property Transfer.** I transfer all or a substantial part of my money or property.

M. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

N. **Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

O. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**13. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**14. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. **Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

B. **No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**15. REMEDIES.** After I default, you may at your option do any one or more of the following.

A. **Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

E. **Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

F. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

In addition, you may also have rights under a "statutory lien". A "statutory lien" means your right under state or federal law to establish a right in, or claim to, my shares and dividends to the extent of any outstanding financial obligations that I have with you. If you have a statutory lien, you may without further notice, impress and enforce the statutory lien on my shares and dividends to the extent of any sums due and payable under the terms of this Note that I fail to satisfy.

Your set-off and statutory lien rights do not apply to an account or other obligation where my rights arise only in a representative capacity. They also do not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check or share draft when the dishonor occurs because you set-off against any of my accounts, or exercised your statutory lien rights. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off or statutory lien rights.

G. **Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**16. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, attorneys' fees of 10 percent of the Principal sum due or a larger amount as the court judges as reasonable and just, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**17. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**18. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Note is in effect:

A. **Power.** I am duly organized, validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

B. **Authority.** The execution, delivery and performance of this Note and the obligation evidenced by this Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

ACS Marketing, Inc.
Florida Promissory Note
FL/4cathydri001051D000838102I1011509N

©1996 Bankers Systems, Inc., St. Cloud, MN ~Expert~

Initials _____
Page 3

C. **Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

19. **INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

.A. **Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.

B. **Flood Insurance.** Flood insurance is not required at this time. It may be required in the future should the property be included in an updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

C. **Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for the Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. I will buy the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

20. **APPLICABLE LAW.** This Note is governed by the laws of Florida, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

21. **JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

22. **AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

23. **INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

24. **NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

25. **CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Loan. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

26. **ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

27. **AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Note and the other Loan Documents, and proposed loans or extensions of credit that relate to this Note. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Note, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Note or another writing.

28. **WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

[Balance of page intentionally left blank]

29. WAIVER OF JURY TRIAL. If the parties do not opt for arbitration, then all of the parties to this Note knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Note or any other Loan Document or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

30. SIGNATURES. By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

ACS Marketing, Inc.

By_____
Arlene C. Stephens, President

| | LOAN NUMBER | ACCT. NUMBER | NOTE DATE | NOTE AMOUNT | MATURITY DATE |
|---|---|---|---|---|---|
| **PRIOR OBLIGATION INFORMATION** | ▓▓▓▓▓▓▓ | | 05/03/06 | $110,000.00 | 05/05/21 |

| | LOAN NUMBER | ACCT. NUMBER | MODIFICATION DATE | NOTE AMOUNT |
|---|---|---|---|---|
| **AMENDED OBLIGATION INFORMATION** | ▓▓▓▓▓▓▓ | | 01/20/09 | $147,100.00 |
| | MATURITY DATE | INDEX (w/margin) | INTEREST RATE | INITIALS |
| | 01/05/19 | Not Applicable | 7.750% | DS |

Creditor Use Only

## DEBT MODIFICATION AGREEMENT

State of Florida's Documentary Stamps have been affixed to the security instrument which secures this Modification and will be cancelled pursuant to law.

**DATE AND PARTIES.** The date of this Debt Modification Agreement (Modification) is January 20, 2009. The parties and their addresses are:

LENDER:
 CAMPUS USA CREDIT UNION
 P.O. Box 147029
 Gainesville, FL 32614-7029
 Telephone: (352) 335-9090

BORROWER:
 ACS MARKETING, INC.
 a Florida Corporation
 10655 SW 69th Terrace
 Ocala, FL 34476

**1. DEFINITIONS.** In this Modification, these terms have the following meanings:

A. Pronouns. The pronouns "I," "me," and "my" refer to each Borrower signing this Modification, individually and together with their heirs, executors, administrators, successors, and assigns. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or entity that acquires an interest in the Modification or the Prior Obligation.

B. Amended Obligation. Amended Obligation is the resulting agreement that is created when the Modification amends the Prior Obligation. It is described above in the AMENDED OBLIGATION INFORMATION section.

C. Loan. Loan refers to this transaction generally. It includes the obligations and duties arising from the terms of all documents prepared or submitted in association with the Prior Obligation and this modification, such as applications, security agreements, disclosures, notes, agreements, and this Modification.

D. Modification. Modification refers to this Debt Modification Agreement.

E. Prior Obligation. Prior Obligation refers to my existing agreement described above in the PRIOR OBLIGATION INFORMATION section, and any previous extensions, renewals, modifications or substitutions of it.

**2. BACKGROUND.** You and I have previously entered into a Prior Obligation. As of the date of this Modification, the outstanding, unpaid balance of the Prior Obligation is $98,052.66. Conditions have changed since the execution of the Prior Obligation instruments. In response, and for value received, you and I agree to modify the terms of the Prior Obligation, as provided for in this Modification.

**3. TERMS.** The Prior Obligation is modified as follows:

A. Promise to Pay. My promise to pay is modified to read:

(1) PROMISE TO PAY. For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $147,100.00 (Principal) plus interest from January 20, 2009 on the unpaid Principal balance until the Loan matures or this obligation is accelerated.

The Principal amount includes the outstanding balance of my loan, and additional funds of $49,047.34 advanced at my request.

B. Maturity and Payments. The maturity and payment provisions are modified to read:

(1) PAYMENT. I agree to pay the Loan in 120 payments. The Loan is amortized over 240 payments. I will make 119 payments of $1,204.00 beginning on February 5, 2009, and on the 5th day of each month thereafter. A single "balloon payment" of the entire unpaid balance of Principal and interest will be due January 5, 2019.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

C. Security. The security provision is modified to read:

(1) New Collateral Added. The following separate security instruments prepared together with this Modification have been added as security:

---

ACS Marketing, Inc.
Debt Modification Agreement
FL/4cathydri0010510000638101701 2009N       ©1996 Bankers Systems, Inc., St. Cloud, MN _Exßere_       Initials ACS
Page 1

## EXHIBIT B

| Document Name | Parties to Document |
|---|---|
| Mortgage - SW CR 484, Parcel ID No. 35341-001-06 | Arlene C. Stephens |

D. Fees and Charges.  As additional consideration for your consent to enter into this Modification, I agree to pay, or have paid these additional fees and charges:

(1) Nonrefundable Fees and Charges.  The following fees are earned when collected and will not be refunded if I prepay the Loan before the scheduled maturity date.

Florida Doc Stamp.  A(n) Florida Doc Stamp fee of $171.85 payable from separate funds on or before today's date.

(2) Late Charge.  If a payment is more than 15 days late, I will be charged 5.000 percent of the Amount of Payment.  I will pay this late charge promptly but only once for each late payment.

E. Insurance.  I understand and agree that any insurance premiums paid to insurance companies as part of this Amended Obligation will involve money retained or paid to you as commissions or other remuneration.

(1) Flood Insurance.  Flood insurance is not required at this time.  It may be required in the future should the property be included in an updated flood plain map.  If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

4. CONTINUATION OF TERMS.  Except as specifically amended by this Modification, all of the terms of the Prior Obligation shall remain in full force and effect.

5. WAIVER.  I waive all claims, defenses, setoffs, or counterclaims relating to the Prior Obligation, or any document securing the Prior Obligation, that I may have. Any party to the Prior Obligation that does not sign this Modification, shall remain liable under the terms of the Prior Obligation unless released in writing by you.

6. REASON(S) FOR MODIFICATION.  Future Advance to term out existing Line of Credit.

7. SIGNATURES.  By signing, I agree to the terms contained in this Modification.  I also acknowledge receipt of a copy of this Modification.


BORROWER:

ACS Marketing, Inc.

By _____
Arlene C. Stephens, President

CYPRESS GROUP
1200 WEBER STREET
ORLANDO, FL 32803



DAVID R. ELLSPERMANN, CLERK OF COURT  MARION COUNTY
DATE: 01/30/2009  03:24:37 PM
FILE #: 2009008157  OR BK 05150 PGS 1531-1540

RECORDING FEES 86.50

MORT DOC TAX 70.00

Prepared by: Catherine Drishel

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL DUE UPON MATURITY IS APPROXIMATELY $100,853.44, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCES MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**
Return to: The Cypress Group, LLC, 1200 Weber Street, Orlando, Florida 32803
This document was prepared by: Campus USA Credit Union, P.O. Box 147029, Gainesville, Florida 32614-7029
State of Florida's Documentary Stamp Tax required by law in the amount of $171.85 has been paid to the Clerk of the Circuit Court (or the County Comptroller, if applicable) for the County of Marion, State of Florida.

Space Above This Line For Recording Data

# MORTGAGE

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is January 20, 2009. The parties and their addresses are:

MORTGAGOR:
ARLENE C. STEPHENS
10655 SW 69th Terrace
Ocala, FL 34476

LENDER:
CAMPUS USA CREDIT UNION
Organized and existing under the laws of Florida
P.O. Box 147029
Gainesville, FL  32614-7029

Arlene C. Stephens, a married woman

1. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender, the following described property:

A parcel of land in Section 35, Township 16 South, Range 20 East, lying South of State Road No. 484 in Marion County, Florida, being more particularly described as follows:

Commencing at the SE corner of said Section 35; thence North 01 degrees 12 minutes 09 seconds West 1325.17 feet; thence South 88 degrees 16 minutes 55 seconds West 1457.11 feet along the South line of the North 3/4

ACS Marketing, Inc.
Florida Mortgage
FL/4csthydri00105100006381017011609Y                ©1996 Bankers Systems, Inc., St. Cloud, MN  ExpereX        Initials _____
                                                                                                              Page 1

## Exhibit C

of said Section 35, to the Point of Beginning of the herein described parcel;  thence continue South 88 degrees 16 minutes 55 seconds West 377.91 feet; thence North 01 degrees 43 minutes 05 seconds West 271.10 feet to the South Right-of-Way of said State Road No. 484; thence South 79 degrees 36 minutes 07 seconds East 386.61 feet; thence South 01 degrees 43 minutes 05 seconds East 189.97 feet to the Point of Beginning.

LESS the following described real property:

Commencing at the SE corner of said Section 35; thence North 01 degrees 12 minutes 09 seconds West 1325.17 feet; thence South 88 degrees 16 minutes 55 seconds West 1457.11 feet along the South line of the North 3/4 of said Section 35 to the Point of Beginning of the herein described parcel; thence continue South 88 degrees 16 minutes 55 seconds West 205.45 feet; thence North 01 degrees 43 minutes 05 seconds West 234.08 feet to the South Right-of-Way line of said State Road No. 484; thence South 79 degrees 36 minutes 07 seconds East 210.13 feet; thence South 01 degrees 43 minutes 05 seconds East 189.97 feet to the Point of Beginning.

The land described herein is not the homestead of the mortgagor(s), and neither the mortgagor(s) nor the mortgagor(s) spouse, nor anyone for who support the mortgagor(s) is responsible, resides on or adjacent to said land.

The property is located in Marion County at SW CR 484, Parcel ID No.  35341-001-06, Ocala, Florida.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property).  This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3112219-63, dated May 3, 2006, from ACS Marketing, Inc. (Borrower) to Lender, with a loan amount of $147,100.00 and maturing on January 5, 2019 and a promissory note or other agreement, No. 3112219-47, dated January 20, 2009, from ACS Marketing, Inc. (Borrower) to Lender, with a loan amount of $20,000.00 and maturing on demand.

**B. All Debts.** All present and future debts made within 20 years from the date of this Security Instrument from ACS Marketing, Inc. to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

**C. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**3. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time will not exceed $167,100.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**4. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Mortgagor warrants that: (a) this Security Instrument is executed at Borrower's request and not at the request of Lender; (b) Mortgagor has the full power, right, and authority to enter into this Security Instrument and hypothecate the Property; (c) the provisions of this Security Instrument do not conflict with, or result in a default under any agreement or other instrument binding upon Mortgagor and do not result in a violation of any law, regulation, court decree or order applicable to Mortgagor; (d) Mortgagor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Mortgagor about Borrower (including without limitation the creditworthiness of Borrower).

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security

ACS Marketing, Inc.
Florida Mortgage
FL/4cathydri00105100006381017011609Y                    ©1996 Bankers Systems, Inc., St. Cloud, MN *ExSerel*                    Initials 
                                                                                                                             Page 3

interest created by this Security Instrument. Mortgagor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property).

A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases).

B. Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs in writing, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all

ACS Marketing, Inc.
Florida Mortgage
FL/4cathydri00105100006381017011609Y      ©1998 Bankers Systems, Inc., St. Cloud, MN  *ExpereŜ*      Initials ___
Page 4

liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

**13. DEFAULT.** Mortgagor will be in default if any of the following occur:

**A. Payments.** Mortgagor or Borrower fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Mortgagor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

**C. Death or Incompetency.** Mortgagor dies or is declared legally incompetent.

**D. Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

**F. Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

**G. Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** Lender determines in good faith that a material adverse change has occurred in Borrower's financial condition from the conditions set forth in Borrower's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**14. REMEDIES.** On or after default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies

ACS Marketing, Inc.
Florida Mortgage
FL/4cathydri00105100006381017011609Y                    ©1996 Bankers Systems, Inc., St. Cloud, MN  *ExpereSi*                    Initials _____
                                                                                                                                      Page 5

under this Security Instrument or any other document relating to the Secured Debts. Mortgagor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, attorneys' fees of 10 percent of the Principal sum due or a larger amount as the court judges as reasonable and just, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Mortgagor.

**16. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude



of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**17. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**18. INSURANCE.** Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Mortgagor will pay for the insurance on Lender's demand. Lender may demand that Mortgagor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher

rate than Mortgagor could obtain if Mortgagor purchased the insurance. Mortgagor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**19. ESCROW FOR TAXES AND INSURANCE.** Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**20. CO-SIGNERS.** If Mortgagor signs this Security Instrument but is not otherwise obligated to pay the Secured Debts, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debts and Mortgagor does not agree by signing this Security Instrument to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**21. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

**22. APPLICABLE LAW.** This Security Instrument is governed by the laws of Florida, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**23. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**24. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**25. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**26. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Mortgagor will be deemed to be notice to all Mortgagors. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any financial statements or information Lender requests. All financial statements and information Mortgagor gives Lender will be correct and complete. Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

ACS Marketing, Inc.
Florida Mortgage
FL/4cathydri00105100006381017011609Y                    ©1996 Bankers Systems, Inc., St. Cloud, MN  Exper~    Initials 
Page 8

**27. AGREEMENT TO ARBITRATE.** Lender or Mortgagor may submit to binding arbitration any dispute, claim or other matter in question between or among Lender and Mortgagor that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as Lender and Mortgagor agree to in writing. For purposes of this section, this Transaction includes this Security Instrument and any other document relating to the Secured Debts, and proposed loans or extensions of credit that relate to this Security Instrument. Lender or Mortgagor will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

Lender and Mortgagor must consent to arbitrate any Dispute concerning the Secured Debt secured by real estate at the time of the proposed arbitration. Lender may foreclose or exercise any powers of sale against real property securing the Secured Debt underlying any Dispute before, during or after any arbitration. Lender may also enforce the Secured Debt secured by this real property and underlying the Dispute before, during or after any arbitration.

Lender or Mortgagor may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to Lender or Mortgagor; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

Lender and Mortgagor acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among Lender and Mortgagor involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Security Instrument, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Security Instrument or another writing.

**28. WAIVER OF TRIAL FOR ARBITRATION.** Lender and Mortgagor understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, Lender and Mortgagor voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**29. WAIVER OF JURY TRIAL.** If the parties do not opt for arbitration, then all of the parties to this Security Instrument knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Security Instrument or any other documents relating to the Secured Debts or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL DUE UPON MATURITY IS APPROXIMATELY $100,853.44, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCES MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

MORTGAGOR:

_Arlene C. Stephens_
Arlene C. Stephens
Individually

_(Witness)_   DAVID STRING

_(Witness)_   Michael Groves

**ACKNOWLEDGMENT.**
(Individual)
STATE OF FLORIDA, COUNTY OF _Marion_ ss.
This instrument was acknowledged before me this 20th day of January, 2009 by Arlene C. Stephens , who is personally known to me or who has produced _FL DL_ as identification.

My commission expires:

_____
(Notary Public)

DAVID STRING
MY COMMISSION # DD 654039
EXPIRES: April 28, 2011
Bonded Thru Notary Public Underwriters

A parcel of land in Section 35, Township 16 South, Range 20 East, lying South of State Road No. 484 in Marion County, Florida, being more particularly described as follows:

Commencing at the SE corner of said Section 35; thence North 01 degrees 12 minutes 09 seconds West 1325.17 feet; thence South 88 degrees 16 minutes 55 seconds West 1457.11 feet along the South line of the North 3/4 of said Section 35, to the Point of Beginning of the herein described parcel;  thence continue South 88 degrees 16 minutes 55 seconds West 377.91 feet; thence North 01 degrees 43 minutes 05 seconds West 271.10 feet to the South Right-of-Way of said State Road No. 484; thence South 79 degrees 36 minutes 07 seconds East 386.61 feet; thence South 01 degrees 43 minutes 05 seconds East 189.97 feet to the Point of Beginning.

LESS the following described real property;

Commencing at the SE corner of said Section 35; thence North 01 degrees 12 minutes 09 seconds West 1325.17 feet; thence South 88 degrees 16 minutes 55 seconds West 1457.11 feet along the South line of the North 3/4 of said Section 35 to the Point of Beginning of the herein described parcel; thence continue South 88 degrees 16 minutes 55 seconds West 205.45 feet; thence North 01 degrees 43 minutes 05 seconds West 234.08 feet to the South Right-of-Way line of said State Road No. 484; thence South 79 degrees 36 minutes 07 seconds East 210.13 feet; thence South 01 degrees 43 minutes 05 seconds East 189.97 feet to the Point of Beginning.

The land described herein is not the homestead of the mortgagor(s), and neither the mortgagor(s) nor the mortgagor(s) spouse, nor anyone for who support the mortgagor(s) is responsible, resides on or adjacent to said land.

The property is located in Marion County at SW CR 484, Parcel ID No.  35341-001-06, Ocala, Florida.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property).  This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

# EXHIBIT D